**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTHONY HARRIS,
     Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS,
NOAH NAGY,
MICHAEL NELSON, and
JASON FERGUSON,
     Defendants.

Case No.: 23-cv-11177

Hon.:

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D.
CONKLIN, PLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B.,
Okemos, MI 48823
Phone: (517) 332-3390
Fax: (517) 853-0434
collin@caseydconklin.com

**COMPLAINT and JURY DEMAND**

1

**STATEMENT OF THE CASE**

This is a case of sex discrimination. The Plaintiff, Anthony Harris, was employed as a Corrections Officer at the Cotton Correctional Institution. Mr. Harris, a single man, engaged in consensual dating relationships with some of the female staff at Cotton at various times during his employment which is within the bounds of MDOC's work rules. While dating one of the female officers, he learned that she was also dating another male friend of his and, for this reason, he ended the relationship. In response to his rebuff, she reported him to MDOC's management and claimed that he had made *unwanted* advances. During MDOC's investigation, the other two women acknowledged that his behavior towards them was, at all times, welcome or that he stopped promptly when he was advised it was not. MDOC nevertheless concluded that he had engaged in *unwanted* conduct towards them. This conclusion was based on nothing more than the stereotype that men harass women and no actual, credible evidence of unwanted conduct on his part. Mr. Harris was terminated from his position at MDOC as a result of this supposition. Worse, MDOC's officials proceeded to refer him for *criminal prosecution* for "stalking" again based on nothing more than this anti-male sentiment. This suit for (1) sex-based discrimination and (2) malicious prosecution against those responsible follows.

**PARTIES and JURISDICTION**

1.      Plaintiff ANTHONY HARRIS ("Plaintiff") is a United States Citizen and a permanent resident of Jackson County, Michigan which is within the geographical bounds of the United States District Court for the Eastern District of Michigan. Plaintiff was formerly employed as a Corrections Officer at the MDOC's Cotton Correctional facility, which is within the Eastern District. This claim seeks to remedy discrimination in employment actions taken to him, which substantially occurred within the Eastern District.

2

2.       Defendant MICHIGAN DEPARTMENT OF CORRECTIONS is a department of the State of Michigan with operations throughout the State and within the Eastern District. The MDOC operates the Cotton Correctional Facility which is located in the County of Jackson, and within the Eastern District.

3.       Defendant NOAH NAGGY was, at the time of the events described in this Complaint, employed as the Warden of the Defendant MDOC's Cotton Correctional Facility.

4.       Defendant MICHAEL NELSON was, at the time of the events described in this Complaint, employed as an Inspector at the Defendant MDOC's Cotton Correctional Facility.

5.       Defendant JASON FERGUSON was, at the time of the events described in this Complaint, employed by the Defendant MDOC's Internal Affairs division.

6.       The Court may exercise general *in personem* jurisdiction over the Defendants because of their permanent presence within the geographical bounds of the Court. In the alternative, the Court may exercise specific jurisdiction over the dispute because the events giving rise thereto occurred within the Court's geographical bounds.

7.       Venue is properly laid in the Eastern District of Michigan pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

8.       The Court may exercise Subject Matter Jurisdiction over the claims emanating from federal law pursuant to 28 USC § 1331.

## GENERAL ALLEGATIONS

9.       Plaintiff became a Corrections Officer with the Michigan Department of Corrections in 2008. He served proudly for over a decade. He received consistently positive evaluations of his

performance. He was never, apart from the incident described herein, accused of or disciplined for any serious misconduct.

10.     It is not a violation of any work rule of the MDOC for officers and employees to carry on personal relationships, even romantic relationships, so long as both parties consent. MDOC's work rules, however, prohibit employees from subjected others to *un-consented* behavior and advances.

11.     State and federal sexual harassment law likewise prohibits only *unconsented* sexualized behavior and advances in the workplace. Coworkers are still allowed to date and the sexual harassment laws are not implicated unless *unconsented* advances or conduct occurs.

12.     On one occasion, Plaintiff attempted to establish a dating relationship with Crystal Wood, a Registered Nurse in Cotton's medical ward. Plaintiff and Wood exchanged flirtatious online messages outside of work. During the later Internal Affairs investigation, Nurse Wood stated with respect to the online messaging "this happened a few times and I told him I am unavailable, and it stopped and still have fb interactions with him however they are appropriate, and he apologized for offending me." When asked about one particularly racy message he was alleged to have sent, Wood told the investigators "I was not offended, just embarrassed for him."

13.     On another occasion, Plaintiff attempted to establish a dating relationship with Emily Lantis, a Resident Care Aid in Cotton's medical department. Here again, Lantis told MDOC's Internal Affairs that "Officer Harris stopped when I told him to stop. That's why I didn't report him."

14.     On another occasion, Plaintiff attempted to establish a dating relationship with Alinda L. Florek, a Registered Nurse at Cotton. Florek was initially receptive to Harris' attempts to initiate a dating relationship and frequently agreed to meet him outside of work, in public, and at his

private residence. Plaintiff found out that Florek was *also* carrying on a romantic relationship with a friend of his. This caused him to end the relationship.

15.    Florek proceeded to report Plaintiff, untruthfully, of "harassing" and "assaulting" her by sending "unsolicited" text messages to her, including photographs of his penis, while at hame and of "forcibly kissing" her while at work.

16.    Defendant MICHAEL NELSON was assigned to investigate Florek's allegations that Plaintiff had engaged in "unconsented" advances towards her.

17.    The MDOC took the step of advising its Internal Affairs of the investigation, and it was decided to treat it as an "IA Monitored" investigation. Defendant JASON FERGUSON was the MDOC Manager of Internal Affairs who oversaw the investigation.

18.    During the investigation, Crystal Wood and Emily Lantis were both identified as "victims" of Plaintiff's "unwelcomed" harassment. Defendant NELSON concluded that they, despite their own statements to the contrary, had been subjected to "unwelcomed" advances and "harassment" by him.

19.    During the investigation, NELSON reviewed the security camera footage from the supposed kissing incident and learned that it did not depict any contact with Florek and Plaintiff, let alone an *unconsented* incident she described.

20.    During the investigation, NELSON reviewed the text messages between Florek and Plaintiff. A cursory review of same would have alerted him that she never told him his messages were unwelcome nor asked him to stop and, in fact, frequently sent messages indicating she was enjoying same.

21.    During the investigation, Florek was unable to produce the supposed photograph of Plaintiff's penis, saying that she had "deleted" it.

22.     Despite all of this, NELSON concluded that Plaintiff had engaged in "unwelcomed" advances towards Florek, Wood, and Lantis and recommended a finding of violations of MDOC work rules based upon this conclusion.

23.     This conclusion was not based upon evidence of wrongdoing, and in fact was made despite significant evidence to the contrary. It was made based upon the gender-based stereotype that men sexually harass women and subject them to unwanted advances. It was based also upon an institutional policy of erring on the side of finding for a female harasser, in favor of a male harassed, due to the risk of suit by the female.

24.     Defendant NAGY approved and ratified NELSON's finding of MDOC work rule violations based upon the supposedly "unwelcomed" advances. When he did so, he knew or should have known that *two of the three* supposed "victims" had disclaimed that Plaintiff's actions were non-consensual. He did so because he accepted the negative stereotype, and the inclination to avoid potential liability by erring on the side of taking a female accuser's word over a male accused's.

25.     Defendant FERGUSON approved and ratified NELSON and NAGY'S finding of work rule violations based upon the supposedly "unwelcomed" advances. When he did so, he knew or should have known that *two of the three* supposed "victims" had disclaimed that Plaintiff's actions were non-consensual. He did so because he accepted the negative stereotype, and the inclination to avoid potential liability by erring on the side of taking a female accuser's word over a male accused's.

26.     On Wednesday, July 7th 2021 Defendant NELSON reported to the Michigan Department of State Police that Plaintiff had "been making unwanted advances" towards Florek and,

specifically, that he "forcibly kissed her while at work in the MDOC Cotton facility and that he sent her at least one unsolicited photo of his penis (two separate incidents)."

27.     Defendant NELSON, upon information and belief, was acting at the approval, ratification, and direction of Defendants NAGY and/or FERGUSON when he reported this to the Michigan Department of State Police.

28.     At this point in time, the Defendants knew or should have known that there was no probable cause to conclude that (1) Plaintiff had "forcibly kissed" Florek in the facility, (2) that he sent her "unsolicited messages" and (3) that he *ever* sent her a photograph of his penis.

29.     Defendant NELSON sent additional information to the Michigan Department of State Police from the investigation, including the text messages he had gathered, the institutional recordings, and the investigation conclusions.

30.     The Michigan State Police, in turn, forwarded the information they had received from the Defendants for evaluation for criminal prosecution based in large part upon the Defendants' conclusion that "harassment" had occurred.

31.     On September 30, 2021 Plaintiff was charged with one count of "simple stalking" in the 12th District Court for the County of Jackson.

32.     The decision to prosecute was substantially influenced by Defendants' conclusions that Plaintiff had engaged in "unconsented" behavior towards Florek.

33.     Plaintiff was arrested on a bench warrant, and arraigned on December 7, 2021.

34.     Plaintiff incurred the costs of hiring a private attorney to contest the charges.

35.     On May 4, 2022 the prosecutor moved for, and the Court granted, an order of *nolle prosequi* in the charge.

**Count I: Equal Protection, Sex Discrimination in Public Employment**
**42 USC § 1983**
***All Defendants***

36.　　As a governmental employee, Plaintiff had a right to equal treatment by his governmental employer that was guaranteed by the 14th Amendment to the Constitution.[1] A state actor violates this provision when they discriminate against an individual in an employment setting based on sex.[2] Such discrimination may be challenged through 42 USC § 1983.[3] Such a claim mirrors that of a sex discrimination claim under Title VII, but does not require administrative exhaustion.[4] The prohibition on sex-based discrimination is violated when an employer makes adverse decisions against an employee based upon attitudes or stereotypes about their sex.[5] Sex-based discrimination occurs when an employer responding to an allegation of sexual harassment assumes truthfulness to a female accuser over the word of a male, based on assumptions about their sex.[6] Adjudicator bias towards males, such as acting upon invidious stereotypes that males harass women, may amount to discrimination based upon sex.[7]

37.　　Plaintiff was terminated from his employment based upon blatantly contrived allegations that he had "forcibly kissed" and sent "unconsented text messages" including photographs of his penis to one of the female employees of the Cotton Correctional facility.

38.　　The institutional security camera images that were reviewed did not depict a "forcible kiss" or any kiss at all for that matter. The principle complainant was unable to produce any photography of Plaintiff's penis. The text messages she did produce did not reflect any

---

[1] *See Washington v. Davis*, 426 U.S. 229, 243 (1976).

[2] *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003).

[3] *Id.*

[4] *Id.*

[5] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)

[6] *Sassaman v. Gamache,* 566 F.3d 307 (2d Cir. 2009).

[7] *Doe v. Baum*, 903 F.3d 575, 585-87 (6th Cir. 2018) (adjudicator bias, favoring female testimony but discrediting males, enough to state claim of sexual discrimination.); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018)

unconsented conduct or harassment. Both of the other supposed "victims" of Plaintiff's conduct both stated that he stopped when he was told to and that they were not offended by his conduct towards them.

39.     The determination that Plaintiff had engaged in work rule violations by engaging in *unwelcomed* conduct towards females was blatantly based upon invidious stereotypes against males. There is a stereotype that men harass women and engage in unsolicited sexual advances towards them. This presumption was enough for the Defendant's to reach the conclusion that Plaintiff harassed Florek and other women at Cotton, despite lack of evidence to the affirmative and significant evidence to the contrary.

40.     The disposition of Florek's charge against Plaintiff was influenced, at least in part, by considerations common to many Human Resource professionals that when a female asserts a charge against a male, error should be made in favor of assuming the female is truthful because she could later initiate litigation if the male prevails.

41.     The decision to termination Plaintiff was influenced, made, ratified, and encouraged by Defendant NELSON, NAGY, and FERGUSON.

42.     Defendant MDOC had a duty to train its investigators and decision makers not to be biased by anti-male stereotypes in disposing of claims such as this. It failed to properly train against discrimination of this nature and this failure to train resulted in the violation of Plaintiff's rights described herein.

43.     Defendant MDOC has a custom of violations of accused males' rights by acquiescing to blatantly false allegations by female accusers. This custom of acquiescence resulted in the violation of Plaintiff's rights.

44.     Plaintiff suffered lost wages and compensation as a result of the termination from his employment.

45.     Plaintiff has suffered, and will continue to suffer, attorney's fees and costs from the opposition of this violation of his rights.

## Count II: Malicious Prosecution
### 42 USC § 1983
*As against Defendants Nagy, Nelson and Ferguson*

46.     When a § 1983 malicious prosecution claim is premised on a violation of the Fourth Amendment, a plaintiff must show (1) that a criminal prosecution was initiated against him and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that the plaintiff suffered a deprivation of liberty as a result of the prosecution; and (4) that the prosecution was resolved in his favor. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010). "[T]he fact that [defendant officers] did not make the decision to prosecute does not per se absolve them from liability." *Id.* at 311.

47.     Here, and as noted previously, Plaintiff was criminally prosecuted for "simple stalking" based upon Florek's allegations against him and the results of NELSON's investigation. The decision to prosecute was influenced by false statements and incorrect, sex-biased presumptions, by Defendant NELSON which were then approved and ratified by Defendants NAGY and FERGUSON.

48.     There was a lack of probable cause for the criminal prosecution. The video recording did not depict *any* kiss at all, let alone the "forcible kiss" that the Defendants represented had occurred. Florek was unable to produce a copy of the supposed photography of Plaintiff's penis

that she claimed to have received. Two of the three women that were interviewed stated that they did not view Plaintiff's conduct as inappropriate or offensive, and that he stopped when asked. Further, the investigator blatantly ignored Florek's likely motive to make false representations against Plaintiff: his decision to end the relationship when he discovered she was also dating his friend.

49.     The prosecution resolved in Plaintiff's favor, when the Jackson County Prosecutor filed a *nolle prosequi* motion.

50.     Plaintiff suffered multiple violations of his liberty as a result of the prosecution. He was arrested and jailed. He was subjected to a continuous, wrongful prosecution. This cost him attorney's fees in defending himself. It caused severe emotional distress.

51.     Plaintiff has suffered interruptions in future employment because prospective employers learn of the arrest, making him less desirable as a candidate for employment.

52.     A conspiracy claim under § 1983 requires allegations of: (1) a single plan; (2) in which each defendant shared a general conspiratorial objective; and (3) the commission of an overt act in furtherance of the conspiracy, causing injury. *Hooks*, 771 F.2d at 944.

53.     Here, Defendants NAGY, NELSON and FERGUSON engaged in a single plan to violate Plaintiff's right by subjecting him to a criminal prosecution in bad faith and with a complete lack of probable cause.

54.     Plaintiff has suffered damages, as more fully laid out before, including but not limited to:

     a.  Lost wages from the position with the MDOC,

     b.  Humiliation, outrage, anger, emotional distress and frustration as a result of Defendant's wrongful actions outlined herein,

     c.  Losses to his character and reputation as a result of the foregoing actions,

    d.  Lost wages from prospective employers by reason of the arrest on his record, and

    e.  Attorney's fees and court costs in opposing Defendants' unlawful violation of his rights.

55.    Due to the flagrant, willful, and wanton violation of Plaintiff's rights he is entitled to an award of punitive and exemplary damages pursuant to applicable law.

**WHEREFORE** Plaintiff demands the following relief:

1. COMPENSATORY DAMAGES in an amount determine to be appropriate by the jury,

2. EXEMPLARY DAMAGES in an amount determined appropriate by the jury,

3. PUNITIVE DAMAGES in an amount determine appropriate by the jury,

4. ATTORNEYS FEES and COSTS, pursuant to statute,

5. Pre and post judgment interest,

6. Such other relief as this Court may deem appropriate in law or equity.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,

Dated: 5/18/2023                      _____/s/ Collin H. Nyeholt_____
                                        Collin H. Nyeholt (P74132)
                                        Attorney for the Plaintiff