UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HARRIS,

          PLAINTIFF,

Case No. 23-11177

v.

NOAH NAGY, MICHAEL NELSON, and
JASON FERGUSON.

Sean F. Cox
United States District Court Judge

          DEFENDANTS.
_____/

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Anthony Harris ("Plaintiff") was employed as a Corrections Officer at the Michigan Department of Corrections G. Robert Cotton Correctional Facility ("MDOC Cotton"). In April 2021, MDOC Cotton investigated a claim that Plaintiff had made "unwanted advances" towards another employee. The investigation report concluded that Plaintiff had engaged in "'unwelcomed' advances" towards three women who worked at MDOC Cotton. Plaintiff was subsequently fired from his position.

In July 2021, Defendant Michael Nelson ("Defendant Nelson"), who led the investigation, referred the investigation report to the Michigan State Police ("MSP"). MSP then referred the report to the Jackson County Prosecutor's Office. Plaintiff was subsequently charged with one count of "simple stalking in the 12th District Court for the County of Jackson. The County Prosecutor later filed a *nolle prosequi* motion on the charge.

On May 18, 2023, Plaintiff filed this sex discrimination case against Defendants Noah Nagy (Warden at MDOC Cotton at the time of the investigation), Jason Ferguson (who oversaw the investigation), and Nelson (jointly, "Defendants") under 42 U.S.C. 1983. In his Amended

1

Complaint, Plaintiff alleges Defendants violated his Fourteenth Amendment right to equal protection by discharging him (Count I), and that Defendants maliciously prosecuted him in violation of his rights under the Fourth Amendment (Count II).

The matter currently before the Court is Defendants' Motion to Dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6). The motion has been fully briefed. Pursuant to the Eastern District of Michigan Local Rule 7.1(f)(2), this motion will be decided on the briefs and without oral argument.

For the reasons set forth below, the Court will **GRANT** Defendants' Motion to Dismiss as to both counts.

## BACKGROUND

### I. Factual Background

Plaintiff was employed as a Corrections Officer at the Michigan Department of Corrections G. Robert Cotton Correctional Facility ("MDOC Cotton"). (ECF No. 6, PageID.62). In April 2021, another employee, Alinda Florek ("Florek") reported Plaintiff to MDOC Cotton management claiming Plaintiff had made "unwanted advances" towards her. (ECF No. 9, PageID.83; ECF No. 12-2, PageID.157–58). Specifically, Florek claimed that Plaintiff's advances included unsolicited messages of a sexual nature and that he had forcibly kissed her inside MDOC Cotton's Healthcare clinic. (ECF No. 12-2, PageID.157–58).

MDOC Cotton investigated the allegations and produced a report ("the report") of their findings. Defendant Nagy was the Warden of MDOC Cotton at the time of the investigation. (ECF No. 6, PageID.63). Defendant Nelson was assigned to investigation Florek's allegations. (*Id.* at PageID.65). Defendant Ferguson was the MDOC Manager of Internal Affairs who oversaw the investigation. (*Id.* at PageID.65). The investigation included reviewing video footage at the

facility, as well as interviews with Plaintiff, Florek, and two other women who worked at MDOC Cotton, Crystal Wood ("Wood") and Emilee Lantis ("Lantis").

Both Lantis and Wood reported that Plaintiff sent them explicit messages which included photos of a penis. (ECF No. 12-2, PageID.86–92).  Both women also stated the messages from Plaintiff were "unsolicited, unwanted, and not asked for." (ECF No. 12-2, PageID.157–58).  Wood stated that she was "not offended [by Plaintiff's messages], 'just embarrassed for him." Lantis stated that Plaintiff "stopped when I told him to stop." (*Id.* at 93; ECF No. 6, PageID.64).

Plaintiff was given the opportunity to respond to these allegations. (ECF No. 12-2, PageID.158–59). Plaintiff claims that he initially had attempted to establish a dating relationship with Florek. (ECF No. 6, PageID.64). He claims she was "initially receptive to [his] attempts to initiate a dating relationship and frequently agreed to meet him outside of work, in public, and at his private residence." (*Id.*) However, Plaintiff claims he "found out that Florek was *also* carrying on a romantic relationship with a friend of his." (*Id.*) This caused Plaintiff to end the relationship. (*Id.*) In his Response, Plaintiff implies that Florek's allegations in the report were knowingly untruthful, and that she did so as retaliation for Plaintiff's decision to end the relationship. (ECF No. 10, PageID.104).

Plaintiff's Response also points out that upon review of security footage at MDOC Cotton, Defendants saw no evidence of Plaintiff forcibly kissing Florek. (ECF No. 6, PageID.65). The report states that because "there are no cameras inside the Healthcare clinic…it cannot be determined what occurred inside the clinic area." (*Id.*)

The report concluded that Plaintiff had engaged in "'unwelcomed' advances" toward Florek, Lantis, and Wood. (ECF No. 10, PageID.106).

Plaintiff was subsequently terminated from his position. (ECF No. 6, PageID.62).

3

In July 2021, Defendant Nelson, referred the report to the Michigan State Police ("MSP") because "criminal activity was suspected" based on the information in the report. (ECF No. 1, PageID.83). Under MDOC policy, Defendants were required to "ensure an immediate referral to the Michigan State Police (MSP) or other appropriate law enforcement agency" whenever criminal activity was suspected. (ECF No. 9-1, PageID.94).

MSP then referred the report to the Jackson County Prosecutor's Office. (ECF No. 6, PageID.67; ECF No. 9, PageID.89). Based on this information, the Jackson County Prosecutor charged Plaintiff with one count of "simple stalking" in the 12th District Court for the County of Jackson. (ECF No. 6, PageID.67). The County Prosecutor later filed a *nolle prosequi* motion on the charge. (*Id.*; ECF No. 9, PageID.89).

**II.      Procedural Background**

On May 18, 2023, Plaintiff filed this action in Federal Court. (ECF No. 1). On August 24, 2023, pursuant to a stipulation granting extra time to respond (ECF No. 3), Defendants filed a Motion to Dismiss. (ECF No. 4).

Rather than rule on Defendants' Motion, this Court granted Plaintiff leave to file an Amended Complaint. (ECF No. 5). On September 18, 2023, Plaintiff filed an amended complaint, which is the active complaint in this case. (ECF No. 6). The Amended Complaint did not include the Michigan Department of Corrections as Defendants as the initial Complaint had. Instead, Plaintiff's Amended Complaint only asserted claims against Defendants Nagy, Nelson, and Ferguson in their individual capacities. (ECF No. 6, PageID.63).

In his Amended Complaint, Plaintiff makes the following claims:

    I.      Equal Protection, Sex Discrimination in Public Employment (42 USC § 1983) (Count I)

    II.     Malicious Prosecution (42 USC § 1983) (Count II)

(ECF No. 6, PageID.68–71).

On September 29, 2023, Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint, which is the Motion currently before this Court. (ECF Nos. 8 and 9). The motion has been fully briefed.

## STANDARD

Defendants bring this motion under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Plaintiff's Amended Complaint asserts two § 1983 claim against Defendants Nagy, Nelson, and Ferguson. (ECF No. 6, PageID.68). To prevail on a cause of action under § 1983, a plaintiff must prove: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law. *North v. Cuyahoga Cnty.*, 754 F. App'x. 380, 384 (6th Cir. 2018) (citations omitted). In other words, a prerequisite to making a claim of a § 1983 violation is an actual, actionable constitutional violation.

Section 1983 claims against individual state actors can be asserted against them in their individual capacity, their official capacity, or both. *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). A § 1983 claim against an individual in his or her official capacity is simply a claim against the municipality itself. *Id.* If a § 1983 claim is asserted against an individual in his or her individual capacity, that individual can assert the affirmative defense of qualified immunity. *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 484 (6th Cir. 2014). Qualified immunity shields public officials who perform discretionary functions from the need to defend against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008).

Determining whether government officials are entitled to qualified immunity generally requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff can show that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Id.* A district court will often rule that an individual officer is entitled to qualified immunity based on the first prong of this analysis because, even when construing the facts in the light most favorable to the plaintiff, the individual did not violate plaintiff's constitutional rights. If this occurs, then the claim of municipal liability against the municipality also fails. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

**I.     Equal Protection, Sex Discrimination in Public Employment (42 U.S.C. § 1983) (Count I)**

Plaintiff first claims that he was discriminated against in an employment decision—his firing—based on the stereotype that men harass women. (ECF No. 6, PageID.66). Plaintiff claims that this stereotype or "presumption was enough for Defendant[s] to reach the conclusion that Plaintiff harassed…women at [MDOC] Cotton, despite lack of evidence to the affirmative and

significant evidence to the contrary." (ECF No. 6, PageID.66). Plaintiff argues this constitutes an employment decision by a state actor based on sex, in violation of his right to Equal Protection under the 14th Amendment. (*Id.* at 8–9).

### A. Qualified Immunity

In their Motion to Dismiss, Defendants assert the affirmative defense of qualified immunity as to Count I.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that [the] defendant [is] not entitled to qualified immunity." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016).

As stated above, determining whether government officials are entitled to qualified immunity generally requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff can show that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Id.* Here, Defendants focus on the second prong. Defendants argue that they are entitled to qualified immunity because Plaintiff has failed to establish that Defendants violated Plaintiff's "clearly established statutory or constitutional rights." (ECF No. 9, PageID.86). Specifically, Defendants argue that because "adjudicator bias" has never been used successfully in an employment-related claim for sex discrimination, the right is not "clearly established". (*Id.* at PageID.87).

Plaintiff disagrees. He argues that as a government employee he had a right to equal treatment by his governmental employer—MDOC Cotton. *See Gurtzwiller v. Fenik*, 860, F.2d 1317, 1325 (6th Cir. 1988). (ECF No. 10, PageID.116). Plaintiff argues that his employer, a state actor, violated this provision when they discriminated against him in an employment setting based on his sex. *Id.* He argues that "the right to be free from sex-based presumption that men harass

7

women" applies "during adjudication of a charge of sexual impropriety in the employment setting." (ECF No. 10, PageID.111).

Specifically, Plaintiff argues this right falls within Title VII. (ECF No. 10, PageID.111–16). The statute is violated if sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). While the case at bar is an Equal Protection claim and not a Title VII claim, the Sixth Circuit has stated that "the showing that a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). In other words, Plaintiff argues that a showing of disparate treatment under Title VII in one case would apply to an equal protection claim in another.

Plaintiff subsequently cites two Sixth Circuit Title VII cases. (ECF No. 10, PageID.112–14).

In *Doe v. Baum*, the court held that the "allegation that the Board accepted the females' version of events over the males', because of invidious gender-based assumptions about males' sexual behaviors toward females, plausibly stated a claim of gender-based discrimination in the resulting disciplinary decision." *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018).

Similarly, in *Doe v. Miami University*, the court held that "the presumption that men harass women amounted to an invidious, and illegal, stereotype to base a decision upon." *Doe v. Miami University*, 882 F.3d 579 (6th Cir. 2018).

Both cases involved adjudicator bias regarding the stereotype that men harass women. But both cases were in the context of university students, and not employment, as is the cases here. The question therefore becomes whether the findings of the above cases apply to employment claims.

However, Plaintiff cites no binding precedent in support. Instead, Plaintiff cites only one Western District of Michigan case, *Kammann v. Fraunhoffer USA,* 12-cv-682 (WD MI 3/25/2022).[1]

Absent any binding case law to support his claim, Plaintiff has failed to show that the right he claims was violated was clearly established at the time of the supposed violation. Plaintiff has thus also failed to carry his burden to show that Defendants are not entitled to qualified immunity.

The Court therefore finds Defendants are entitled to qualified immunity as to Count I. The Court hereby **GRANTS** Defendants' motion to dismiss as to Court I.

## II.     Malicious Prosecution (42 USC § 1983) (Count II)

Next, Plaintiff makes a claim of Malicious Prosecution under 42 U.S.C. § 1983. (ECF No. 6, PageID.70). When a § 1983 malicious prosecution claim is based on a violation of the Fourth Amendment, a plaintiff must show: (1) that a criminal prosecution was initiated against him and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that the plaintiff suffered a deprivation of liberty as a result of the prosecution; and (4) that the prosecution was resolved in his favor.

---

[1] In *Kammann*, the Court found that even though *Kammann* was an employment case, *Baum* and *Miami* governed. However, *Kammann* is distinguishable from the case at bar for several reasons. First, the alleged harasser in Kammann was in a more senior position to the alleged victim whereas here, Plaintiff was not in the same chain-of-command as the alleged victims. *Kammann* at 1-3. (ECF No. 10-2, PageID.130).
Second, there was only one alleged female victim in Kammann whereas here there are three. *Kammann* at 1. (ECF No. 6, PageID.64).
Third, *Kammann* alleged that he was not given an opportunity to address some of the allegations against him. *Kammann* at 4. Here, Plaintiff makes no such claim, and was given the opportunity to respond to each of the allegations made against him. (ECF No. 10-2, PageID.131).
Fourth, the investigator and main decision-maker in *Kammann* was female. Here, the Defendants/decision-makers are all male. (ECF No. 12, PageID.145; ECF No. 10-2, PageID.131).
Finally, and most importantly, *Kammann* included an allegation of direct evidence through a comment allegedly made by one of the decision-makers involved in the investigation at issue. (ECF No. 25, PageID.266). Here, Plaintiff makes no such claim.
These distinctions significantly differentiate the facts in *Kammann* from the case at bar. Further, the factual distinctions here are not enough to "nudge [Plaintiff's] claims across the line from conceivable to plausible" as the Court found in *Kammann*. Therefore, even if the court considered *Kammann*, and even construing the facts in the light most favorable to the plaintiff, Plaintiff here has failed to provide any plausible evidence to show that a constitutional violation occurred, and subsequently would fail to sufficiently plead an equal protection claim.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Defendants contest the first and second elements.

      **A.    Whether Defendants Made, Influenced, or Participated in the Decision to Prosecute**

First, Plaintiff states that Defendant Nelson reported to the Michigan State Police ("MSP") that Plaintiff had "been making unwanted advances" towards another employee and that he "forcibly kissed her while at work at the MDOC Cotton facility and that he sent her at least one unsolicited photo of his penis (two separate incidents)." (ECF No. 6, PageID.66–67). Plaintiff argues these statements were false, incorrect, sex-biased presumptions. (*Id.* at PageID.70–71). Plaintiff claims that Defendant Nelson "was acting at the approval, ratification, and direction of Defendants Nagy and/or Ferguson" when he made these statements in the report. (*Id.* at PageID.67).

Plaintiff argues the report to MSP resulted in the criminal prosecution against him for "simple stalking" and that Defendants thus made, influenced, or participated in the decision to prosecute. (ECF No. 10, PageID.108). Further, Plaintiff argues "[t]he decision to prosecute was influenced by [these] false statements and incorrect, sex-biased presumptions." (ECF No. 6, PageID.70–71).

Defendants disagree. While they did refer the report (which included these statements) to MSP for review, they argue that there were "*two* intervening organizational decision-makers between Defendants and Plaintiff's prosecution" namely, MSP and the Jackson County Prosecutor. (ECF No. 9, PageID.89). This means that even if Defendants did "influence or participate in the decision to prosecute" they are still not liable for malicious prosecution because the other organizations are intervening third parties. (ECF No. 9, PageID.89–90). They argue the presence

10

of an intervening third party means the first party—Defendants—cannot be liable. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (*Id.*)

In general, the Supreme Court has stated that "§ 1983 'should be read against the background of tort liability.'" *Powers*, 501 F.3d at 611. In other words, proximate-cause questions in § 1983 cases are a matter of foreseeability. *Id.* "Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Id.*

In cases regarding malicious prosecution, the Sixth Circuit has held that "the fact that [defendant officers] did not make the decision to prosecute does not per se absolve them from liability." *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). (ECF No. 9, PageID.88). An investigator can be held liable under § 1983 for making material false statements knowingly or in reckless disregard for the truth in an attempt to establish probable cause for an arrest. *Vakilia v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Here, the parties disagree as to whether Defendants provided or made material false statements knowingly or in reckless disregard for the truth when they referred to MSP. But the parties *do not* contest that the statements in Defendants' the report resulted in Plaintiff's prosecution for "simple stalking." At this stage of the proceedings, however, allegations of such false statements are sufficient to survive a motion to dismiss.

The Court thus finds Plaintiff meets the first element.

**B.      Whether There Was a Lack Of Probable Cause for the Criminal Prosecution**

Second, Plaintiff must show that there was a lack of probable cause for the criminal prosecution. Here, Plaintiff argues that there was a lack of probable cause for his criminal prosecution for "simple stalking." (ECF No. 9, PageID.88). Plaintiff states that Defendants "made

11

incorrect representations to the Jackson County Prosecutor[2] that [Plaintiff] had engaged in unwelcomed advances towards women" at MDOC Cotton. (ECF No. 10, PageID.118). Plaintiff points to three statements within Defendants' report that he argues were "incorrect representations."

First, the report stated that Plaintiff had "forcibly kissed" Florek, despite the fact that the security camera showed no such incident. (ECF No. 6, PageID.71).

Second, the report stated that Plaintiff had sent Florek "unsolicited photos of his penis" even though she was not able to produce this alleged message. (*Id.*)

Third, Defendants characterized Plaintiff's conduct or advances towards two of the three women in their report as "unwelcomed" even though the women "stated that they did not view Plaintiff's conduct as inappropriate or offensive and that he stopped when asked." (*Id.*)

This Court disagrees.

First, the report does not state or conclude that Plaintiff "forcibly kissed" Florek. Rather, the report states that "[Plaintiff] allegedly grabbed [Florek] by the head and kissed her." (ECF No. 12-2, PageID.153). Further, Defendant Nelson concluded in his report that "[w]hile there is institutional camera footage showing [Plaintiff]…and Florek were in the Healthcare clinic at the same time, there are no cameras inside the Healthcare clinic to show what occurred inside." (ECF No. 12, PageID.146). "Due to the clinic are[a] having no institutional cameras inside of it, it cannot be determined what occurred inside the clinic area." (*Id.*)

Second, in the report, Plaintiff was found in violation of three Work Rules for sending pictures/photographs/drawings of a sexual nature, including photos of a penis, which Plaintiff's

---

[2] Defendants provided their report to MSP, who then referred the report to the Jackson County Prosecutor.

message appeared to allege was his own. (ECF No. 12, PageID.146; ECF No. 12-2, PageID.159, 164–67, 175–76).

Third, the report stated that Wood stated that she was "not offended [by Plaintiff's messages], 'just embarrassed for him." Lantis stated that that Plaintiff "stopped" when asked. (ECF No. 12-2, PageID.157–58). Both women also stated the messages from Plaintiff were "unsolicited, unwanted, and not asked for." (*Id.*)

The Court therefore finds Plaintiff has failed to show that there was a lack of probable cause for his "simple stalking" prosecution.

Further, even if Plaintiff *could* meet this element, Defendants would still be entitled to qualified immunity, because their referral of the matter to MSP was a discretionary decision supported by MDOC policy. (ECF No. 9-1, PageID.94). As the Sixth Circuit found in *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 901 (6th Cir. 2020), qualified immunity extends to public officers and employees for acts performed in the exercise of their discretionary functions. *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 901 (6th Cir. 2020); *see also Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 650 (6th Cir. 2015).

As such, Plaintiff cannot make a claim for Malicious Prosecution.

The Court will therefore **GRANT** Defendants' Motion to Dismiss as to Count II.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendant's Motion to Dismiss as to both counts.

**IT IS SO ORDERED.**

Dated: March 22, 2024    s/Sean F. Cox
                        Sean F. Cox
                        U. S. District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 22, 2024, by electronic and/or ordinary mail.

                                                       s/Jennifer McCoy
                                                      Case Manager